# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN HUFF, | ) | CASE NO. 1:20-cv—02499 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| | ) | **DEFENDANTS' TRIAL BRIEF** |
| vs. | ) | |
| | ) | |
| | ) | |
| SANGEETA MAHAJAN MD et a. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Now comes Defendants Sangeeta T. Mahajan MD and Katen Pabley (collectively, the "Pabley Defendants"), and hereby submit the Pabley Defendants' trial brief in this matter.

**I.  The Pleadings in This Case.**

    **A.  The Complaint.**

The complaint in this case alleges that the Pabley Defendants effectively issued a wrongful K1s to the Plaintiff - thus causing a wrongful tax debt for the Plaintiff to the IRS.  See ¶s 7 to 10 and ¶s 25, 28, 31, 32, 34, 36, 37, 38, 39, 40, 53, 54, 55, 56, 62, 64, 70, 71, 72, 75, 78 and 79.  The complaint is premised *entirely* on the assumption that the K1s in question were wrongfully issued and fraudulent as to the Plaintiff.

**B.   The Answer and Counterclaims of the Pabley Defendants.**

As set forth in the separate (but substantially the same) *Answer and Counterclaim of Defendant Katen Pabley* (doc# 21) (the "Pabley Pleading") and (B) *First Amended Answer and Counterclaim of Defendant Sangeeta Mahajan* (doc# 22) (the "Mahajan Pleading"):

- A.   Plaintiff sought to bring these wrongful K1 claims as a very delayed counterclaim against the Pabley Defendants in the Cuyahoga County "State Case"[1] (see Count VIII to Exhibit C-1[2] to the Pabley Pleading and the Mahajan Pleading);
- B.   Plaintiff sought to bring an extremely delayed and untimely third party complaint against defendants Creative Business Strategies, Inc. Gary Cerasi and Charlton Beilstein (the "Accountant Defendants") in the State Case which also asserted the same K1 claims as asserted in this case (see Exhibit D to the Pabley Pleading and the Mahajan Pleading);
- C.   The trial court in the State Case denied the Plaintiff's attempt to bring that untimely third party complaint against the Accountant Defendants (see Exhibit F to the

---

[1] As defined in ¶29 of the Pabley Pleading and the Mahajan Pleading.

[2] For consistency's sake, the Pabley Defendants will use the same exhibit markers for trial (i.e. Exhibit A, Exhibit B, etc.) as were used in the Pabley Pleading and the Mahajan Pleading.

    Pabley Pleading and the Mahajan Pleading);

D. Plaintiff, having been rightly denied the ability to bring a delayed third party complaint against the Accountant Defendants in the State Case, dismissed the K1-based claims against the Pabley Defendants (see <u>Exhibit H</u> and <u>Exhibit I</u> to the Pabley Pleading and the Mahajan Pleading);

E. Plaintiff also brought the same K1-based claims against the Accountant Defendants in a separate Cuyahoga County Common Pleas case (the "First Accountant Suit),³ which Plaintiff then dismissed (after being served with discovery) prior to the filing of this federal case (see <u>Exhibit J</u> and <u>Exhibit K</u> to the Pabley Pleading and the Mahajan Pleading).

As the pleadings in this case make unconditionally clear, Plaintiff seeks to sue both the Pabley Defendants and (initially) the Accountant Defendants (in this federal case, the State Case and the First Accountant Suit) based upon a woefully premature claim that the K1s at issue were wrongful, inappropriate and fraudulent. It is also clear that Plaintiff has attempted to bring this series of K1-based claims without ***first*** resorting to the mandated process for ***administratively*** contesting those claims with the Internal

---

³ As defined in ¶29.J of the Pabley Pleading and the Mahajan Pleading).

Revenue Service ("IRS"). It is also clear from the two (2) status conferences held by this Court that the Plaintiff still refuses to promptly and properly commence that mandated administrative process - even after this Court and counsel for the Pabley Defendants and the Accountant Defendants have implored the Plaintiff to do so.

Instead, the Plaintiff seeks to have this Court determine what this Court cannot legally do: ***administratively*** determine whether the K1s were proper or not.

## II. <u>The current status of this case</u>.

As this Court is aware, this Court, by order dated August 31, 2022, overruled the Pabley Defendants motion for judgment on the pleadings, and also overruled Plaintiff John Huff's ("Huff") motion for summary judgment on Huff's claims. Further, this Court did grant summary judgment on the abuse of process and malicious prosecution counterclaims made by the Pabley Defendants.

Notwithstanding the loss of the counterclaims for abuse of process and malicious prosecution, the Pabley Defendants do have a number of affirmative defenses remaining in the case, including but not limited to: Huff's damages are his own fault or the fault of others and/or are of his own making (2nd defense); mitigation of damages (4th defense); laches/statute of limitations (5th defense); exhaustion of remedies/abandonment (7th defenses); consent (8th defense); equitable estoppel/judicial estoppel (9th defense); waiver

(10th defense); primary jurisdiction and jurisdictional priority (11th defense); privilege (11th defense); standing (13th defense); capacity (14th defense); good faith/reasonable cause (15th defense); public policy (16th defense); and lack of equity/unclean hands (17th defense). So many of the trial facts that were relevant to the Pabley Defendants' counterclaims are also directly relevant to the affirmative defenses.

III. **Discovery Issues**.

As this Court has seen, Huff and his henchman William Ross have played significant games in the discovery process. Despite the fact that this Court had both Mr. Ross and Huff on the pretrial conference on July 11, 2022 (where this Court denied the Ross motion to quash and denied Huff's objections to the request for production of documents): (a) Huff has still not produced his tax returns and (b) Ross produced a bad faith 8000-page document dump on September 8, 2022. As the undersigned made very clear during the email exchange which scheduled this mediation, the failure of both Huff and Ross to timely and in good faith produce the long-sought documents significantly encroaches on any reasonable possibility of a settlement of this case and prejudices the trial rights of the Pabley Defendants. In that regard, it is really without question that (a) Huff and Ross are playing games with the Pabley Defendants, (b) Huff and Ross are playing games with this

Court and (c) Huff and Ross are abusing the discovery order and directive that this Court issued on July 11, 2022.

The Ohio Supreme Court has a very great quote when it comes to this type of behavior.  In <u>Disciplinary Counsel v. Stafford</u>, 128 Ohio St.3d 446 (2011) the Ohio Supreme Court made this very clear:

> "We have repeatedly held that the practice of law is 'a learned profession grounded on integrity, respectability, and candor.' See, e.g., *Disciplinary Counsel v. Claflin*, 107 Ohio St. 3d 31, 2005 Ohio 5827, 836 N.E.2d 564, ¶ 14. ***** Discovery is a critical part of the litigation process, and it often takes up a majority  of the time that lawyers spend in litigating a case. '***Our system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case***.'' *Cincinnati Bar Assn. v. Marsick* (1998), 81 Ohio St. 3d 551, 553, 1998 Ohio 337, 692 N.E.2d 991, quoting *Abrahamsen v. Trans-State Express, Inc*. (C.A.6, 1996), 92 F.3d 425, 428-429." (Emphasis supplied).

The foregoing citation is directed at Ross and Huff - **not** counsel for Huff (the undersigned believes that Huff is trying to game his own lawyers).   It is the understanding of the undersigned that Ross[4] is a lawyer licensed to practice in Ohio, despite the fact that he had another lawyer file the motion to quash.

### IV.    <u>The Doctrine of Primary Jurisdiction</u>.

This court overruled the Pabley Defendants' motion for judgment on the pleadings regarding the doctrine of "primary

---

[4]  Ross has been subpoenaed by the Pabley Defendants for trial.

jurisdiction."   The trial court did so because the motion for judgment on the pleadings was based solely on the pleadings and not on facts to be produced and revealed at trial   Given this matter will tried to this Court, the doctrine of primary jurisdiction will be a very relevant trial issue.

The doctrine of primary jurisdiction bars all of the Plaintiff's claims.  As set forth in the summary of the LEXIS explanation of the doctrine of "primary jurisdiction:"

> The principle that the courts can not or will not determine a controversy involving a question which is within the jurisdiction of an administrative tribunal, prior to the decision of that question by the administrative tribunal, (1) where the case demands the exercise of administrative discretion, requiring the special knowledge, experience, and services of the administrative tribunal, to determine technical and intricate matters of fact; and (2) where uniformity of ruling is essential to comply with the purposes of the regulatory statute administered.

Further, as set forth in <u>Cleveland v. Cleveland Elec. Illuminating Co.</u>, 115 Ohio App. 3d 1 (8th District, 1996):

> Primary jurisdiction ..."*** applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under **a regulatory scheme**, have been placed within the special competence of **an administrative body**; in such a case the **judicial process is suspended** pending referral of such issues to the administrative body for its views. <u>General American Tank Car Corp. v. El Dorado Terminal Co.</u>, 30813 U.S. 422, 433, 84 L. Ed. 361, 370, 60 S. Ct. 325."
> (Emphasis added.)
>
> The doctrine of primary administrative jurisdiction does not apply, however, in relation to a question which, while properly determinable by an administrative agency does not involve a matter within the special expertise of the agency such as a matter of law. <u>Opdyke v. Security Savings and Loan</u> (1950), 43 Ohio Op. 463, 59 Ohio L. Abs. 212, 97 N.E.2d 435, aff'd, 59 Ohio L. Abs. 257, 99 N.E.2d 84 (1951), aff'd, 157

>Ohio St. 121, 105 N.E.2d 9 (1952); <u>Eastern Shore Natural Gas Co. v. Stauffer Chemical Co.</u> (Del.S.Ct. 1972), 298 A.2d 322.
>
><u>Cleveland Electric</u> at 289. More recently, the Tenth District quoted **the U.S. Supreme Court's explanation** of the doctrine of primary jurisdiction as follows:
>
>>"The doctrine of primary jurisdiction, like the **rule requiring exhaustion of administrative remedies**, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. '**Exhaustion**' applies where a claim is cognizable in the first instance by an administrative agency alone; **judicial interference is withheld** until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. ***
>>
>>No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. More recently the expert and specialized knowledge of the agencies involved has been particularly stressed. ***"
>
><u>Malone v. Academy of Court Reporting</u> (1990), 64 Ohio App. 3d 588, 592, 582 N.E.2d 54, quoting <u>United States v. Western Pacific R.R. Co.</u> (1956), 352 U.S. 59, 77 S. Ct. 161, 1 L. Ed. 2d 126. (Emphasis supplied).

Federal law also strongly follows the doctrine set forth above. See, e.g. <u>Chase v. Andeavor Logistics, L.P.</u>, 12 F.4th 864 (8th Cir. 2021); (holding that at a minimum, all court proceedings should be

stayed pending the outcome of the administrative proceeding); C.W. v. Denver Cty. Sch. Dist. No. 1, 994 F.3d 1215 (10th Cir. 2021) (holding that "[d]ismissal rather than a stay has been approved where there is assurance that no party is prejudiced thereby."); Wyandot Nation v. United States, 858 F.3d 1392 (Fed. Cir 2017) (dismissal without prejudice was appropriate); Pennington v. ZionSolutions LLC, 742 F.3d 715 (7th Cir. 2014) (also holding that at a minimum, all court proceedings should be stayed pending the outcome of the administrative proceeding); TON Servs. v. Qwest Corp., 493 F.3d 1225 (10th Cir. 2007) (also holding that at a minimum, all court proceedings should be stayed pending the outcome of the administrative proceeding); and Carter v. American Tel. & Tel. Co., 365 F.2d 486 (5th Cir. 1966). This doctrine is also followed by Courts in this Circuit. See In re Long Distance Telecommunications Litigation, 831 F.2d 627 (6th Cir. 1987) (holding that issues involving FCC rules and rulings required that the District Court stay any federal litigation pending the outcome of the FCC proceedings). *In re Long Distance Telecommunications Litigation* has been followed again in this Circuit. See Beattie v. CenturyTel, Inc., 234 F.R.D. 160 (ED Mich. 2006); and Aubrey v. Ameritech Mobile Communs., 2002 U.S. Dist. LEXIS 15918 (ED Mich. 2002).

In fact, the very recent case of Balle-Tun v. Zeng & Wong, Inc., 2022 US Dist. LEXIS 87180 makes it very clear that a

plaintiff seeking to assert a valid §7434 claim must plead and/or prove the specific damages incurred by that plaintiff. Balle-Tun, *supra*, cites to the case of Queen v. Zefco Inc., D.S.C. Civil Action No. 8:19-cv-2966-TMC, 2020 U.S. Dist. LEXIS 253465 (June 18, 2020).[5] Both Balle-Tun, *supra*, and Queen, *supra*, both support the argument that if there is no actual injury, in the pleading or by proof, there is no valid claim under §7434. There appears to be no question at this point that Plaintiff has failed, for some unexplained reason, to apply for a Form 8082 IRS appeal.

The primary jurisdiction doctrine easily applies in this case. This Court (via court order) cannot do anything in this case unless and until the IRS (and perhaps the Tax Court if the aggrieved parties seek to take it further) performs the mandated administrative review of the Plaintiff's claim that the K1s at issue here were wrongfully issued. It is beyond comprehension that, prior to the commencement of this federal case (or the commencement - and dismissal - of the claims in either the State Case or First Accountant Case), the Plaintiff has not sought a full IRS administrative review of the K1 issue.

But the law has a clear remedy here (provided by the jurisdictional priority doctrine) - and that is a judgment for the

---

[5] See also the very recent case of *Schmelzer v. Animal Wellness Ctr. of Monee, LLC*, N.D.Ill. No. 18-cv-01253, 2022 U.S. Dist. LEXIS 136044 (Aug. 1, 2022) that again confirms the Balle-Tun/Queen reasons.

Pabley Defendants dismissing the claims of the Plaintiff for the repeated failure of the Plaintiff to seek an IRS administrative review.  At the very least, this Court (if this Court chooses in its discretion to do so) should indefinitely stay these proceedings until after there is a final non-appealable IRS/Tax Court review of the K1 issues at play here.

### V. Plaintiff can produce no document that shows he attempted to engage the IRS in his objection to the K1s - and can produce no evidence of any damages.

As this Court has pointed out to Plaintiuff a number of times in the pretrial process, and as the Pabley Defendants pointed out during the dispositive motion practice in this case, Huff refuses to explain why he has not engaged the IRS on **any** review of **any** objections he has to the K1s.  Further, Huff has never produced a single shred of evidence that he has suffered any **damages**.

### VI. Expert Terri Lastovka.

As the Lastovka Report makes clear (and as Lastovka will testify at trial), the Plaintiff should have filed IRS Form 8082 with the IRS by no later than December 18, 2020 (for the 2014 K1) and February 14, 2021 (for the 2015 K1).  This lawsuit was filed on November 5, 2020 - before either of those two deadlines.  Further, as set forth in the respective Counterclaims of the Pabley

Defendants filed on January 25, 2021 ([docs# 21 and 22] (the "Counterclaims"), the Plaintiff had pursued these spurious "K1" tax claims in the State Case as early as February 25, 2019. See Exhibit A, Exhibit C1, Exhibit H and Exhibit I to the Counterclaims, where Plaintiff pursued (and then dismissed) the same "K1" allegations against the Pabley Defendants. Further, see Exhibit D and Exhibit F to the Counterclaims, where the Plaintiff attempted (and failed) in the State Case to bring third party claims against the same accountant defendants in this federal case - based upon the same "K1" claims in this case. Further still, see Exhibit J and Exhibit K to the Counterclaims, which show that the Plaintiff filed a direct July 11, 2019 separate lawsuit against the same accountant defendants in this case, which the Plaintiff voluntarily dismissed on March 4, 2020.

**VII. The Form 8082.**

It is anticipated that the Plaintiff will try to confuse the trier of fact about how an IRS Form 8082 works. The Plaintiff simply misunderstands the relevant sections of Form 8082 and/or completely misreads the form. Page 3 of Instructions state that you cannot use the form if *all* of the following apply: (1) the tax year of the partnership began prior to January 1, 2018; (2) the partnership did not make an early election into BBA; (3) the partnership had no more than 10 partners at any one time during the

tax year (a husband and wife (and their estates) are treated as one partner), (4) ***each partner was either an individual (other than a nonresident alien) or an estate of a deceased partner, or a C corporation,*** and (5) the partnership did not have an election in effect under section 6231(a)(1)(B)(ii) (prior to amendment by BBA) for the tax year to have the TEFRA consolidated audit rules apply. Four (4) of the partners/members in Purishealth LLC were LLCs – i.e. not all partners/members were just individuals or an estate of a deceased partner or a C corporation.

**VIII. Cerasi**.

The affidavit of Gary Cerasi (which was attached to the SJ Motion) also reeks with suspicion. As part of the exhibits to be presented by the Pabley Defendants at trial are some of the documents produced by the Mr. Cerasi and his lawyer in connection with the subpoena issued to them. As thoe documents will reveal, the Plaintiff attempted to shove through a false and/or misleading affidavit for purposes of this litigation, which had to be rejected by Mr. Cerasi and his fellow accountants.

**IX. The testimony of James Leiken must be stricken or disregarded**.

The proposed testimony of James Leiken must be stricken or disregarded by this Court. Here is why.

First, the expert report provided by Leiken in this case was

obviously provided in the State Case for an entirely different reason; to wit the valuation of, and article 9 transactions involving, Purus Health, the company at issue in this case and the State Case. There is some benign lip service (but no real opinions) given to the K1 issues, but the primary thrust of the Leiken report are the article 9 transactions and the putative damages in the State Case. Is was only being used to *imply* that the accountant defendants in the State Case were somehow deficient in how they provided services related to the issuance of the K1s, and in fact **does not** opine that there was any fraud on behalf of the Pabley Defendants or anyone else in the issuance of the K1s at issue. In fact, it instead implies a serious and bonafide tax/financial dispute between the Pabley Defendants and the Plaintiff. The Plaintiff in this federal case is functionally taping the Leiken report from the State Case to this case - without ever specifically getting Leiken to issue a report in this case. Therefore, any attempt by the Plaintiff to use the testimony of Leiken to prove a "fraud" case here must be barred or disregarded by this Court.

Further, it is clear that the Leiken report is based on *multiple* layers of inadmissable hearsay (fitting no exception permitted under the Federal Rules of Evidence). Accordingly, so will his putative trial testimony.

**X.   The Pabley Defendants steadfastly deny any fraud-based or malicious purposes behind the issuance of the K1s**.

The Pabley Defendants steadfastly deny the factual allegations made by the Plaintiff.  The Pabley Defendants claim that after the Plaintiff (Huff) had left the company (and after defrauding the Pabley Defendants with a fake UCC sale of the company's assets),[6] their audit of the company showed that Plaintiff had removed (without consent or notification to the members of the company) $155,000 in 2015 and $77,000 in 2014.

**XI.   What is really going on with Plaintiff's lawsuit here**.

As clearly pointed out in the Answer and Counterclaims filed by the Pabley Defendants, Huff is using this federal litigation as leverage to assist him in the fraud he committed against the Pabley Defendants in the State Case.  Attached to the Answer and Counterclaim of the Pabley Defendants are the numerous other filings Huff made in the State case and in other cases filed in the common pleas court.[7]  Settlement negotiations in the State Case have stalled (by Huff, Ross and their co-defendants) in order to see what becomes of this case.

---

[6] See Exhibit B to the Counterclaims – the story of Plaintiff's fraud against the Pabley Defendants.

[7] These are some of the exhibits the Pabley Defendants will present to this Court at trial.

**XII. <u>Fees and Costs</u>.**

As of the writing of this mediation statement, the Pabley Defendants have had to incur over 115 hours of attorney fees ($250/hour) and $1,100 of expenses. After the inevitable verdict for the Pabley Defendants, the Pabley Defendants will be seeking those fees and costs per 28 USCS § 1927 and Rule 11.

Respectfully submitted,

*<u>s/Michael J. O'Shea</u>*
LIPSON O'SHEA LEGAL GROUP
Michael J. O'Shea, Esq. (0039330)
michael@lipsonoshea.com
The Hoyt Block Building
700 West St. Clair Avenue - Suite 110
Cleveland, Ohio  44113
(216) 241-0011
(440) 331-5401 - fax
**Attorney for Defendant Sangeeta Mahajan and Defendant Katen Pabley**